UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY E. McKINNEY, | No. 2:17-cv-02564-TLN-DB |
| Plaintiff, | |
| v. | **MEMORANDUM AND ORDER** |
| WELLS FARGO BANK, N.A.; and DOES 1-100, inclusive, | |
| Defendants. | |

Plaintiff Mary E. McKinney ("Plaintiff") brings this action against Defendant Wells Fargo Bank ("Defendant" or "WFB") alleging violations of California's Homeowner Bill of Rights ("HBOR"),[1] as well as negligence in the handling of Plaintiff's loan modification applications, and violations of California's Unfair Competition Law ("UCL"), California Business and Professions Code § 17200 *et seq.*, resulting from the handling of Plaintiff's loan modification applications. Plaintiff filed her Complaint in state court on November 17, 2017, and Defendant removed the action to this Court on December 7, 2017. Presently before the Court is Plaintiff's *Ex Parte* Application for Temporary Restraining Order ("TRO"). (ECF No. 11.) For the reasons

---

[1] The Court notes that the California Legislature amended many provisions of the HBOR, effective January 1, 2018, and the numbering of certain provisions has changed. Plaintiff filed her Complaint in 2017 under the old provisions of the HBOR, but seeks an injunction at least in part for WFB's alleged actions in 2018. It appears this has caused some confusion, as Plaintiff cites to both Cal. Civ. Code § 2923.6 (preventing dual tracking before January 2018) and § 2924.11 (the new dual tracking provision). *See* Pl.'s TRO, ECF No. 11, at 6. To the extent Plaintiff complains of WFB's actions in 2018, the 2018 HBOR applies.

1

set forth below, that application is GRANTED.

## I. FACTUAL AND PROCEDURAL BACKGROUND[2]

The parties agree on the majority, if not all, of the facts pertinent in this action. Plaintiff obtained a loan on the subject property, her permanent residence, in December 2007 through World Savings Bank FSB. Sometime thereafter, the servicing rights were transferred to Defendant WFB. Plaintiff then fell behind on her mortgage payments. Defendant claims—and Plaintiff does not dispute—the default first occurred in October 2012 and eventually led to a Notice of Default ("NOD") issued in February 2013. The parties then engaged in the process of submitting and reviewing two loan modification applications in 2014 and 2015, both of which were denied. Plaintiff thereafter filed a lawsuit against WFB, case number 2:16-cv-00240-JAM-KJN, which action the parties settled in June 2016. According to Defendant, WFB agreed as part of that settlement to conduct another loan modification review. That review was also denied in July 2016.

Defendant filed a Notice of Sale on January 5, 2017. Plaintiff then filed the present lawsuit in state court on November 17, 2017, and Defendant removed the action to this Court on December 7, 2017. Plaintiff's Complaint, (ECF No. 1), alleges violations of the HBOR, as well as negligence in the handling of Plaintiff's loan modification application, and violations of the UCL resulting from WFB's handling of a loan modification application submitted in June 2017.

After filing her Complaint, Plaintiff then submitted another loan modification application in August 2018, which was denied in writing later that month. Therein, Plaintiff was offered a short sale of her home, but took no action in that regard. Instead, Plaintiff appealed the denial by a letter from counsel dated October 2, 2018, specifically requesting additional information regarding the reasons for denial pursuant to California Civil Code § 2924.11. (ECF No. 11 at 48-50.) WFB denied the appeal in writing later that month. The letter denying Plaintiff's appeal provided only that Plaintiff "still [did] not meet the requirements for loan modification." (ECF No. 11 at 52.) On December 14, 2018, WFB issued another Notice of Sale, setting the sale date for January 22, 2019. Plaintiff filed the present request for TRO on January 10, 2019, and

---

[2] Unless otherwise noted, the following facts are derived from the parties' briefs and are undisputed.

2

Defendant filed a response on January 14, 2019. (ECF Nos. 11, 13.)

## II. STANDARD OF LAW

A temporary restraining order is an extraordinary remedy. The purpose of a temporary restraining order is to preserve the status quo pending a fuller hearing. See Fed. R. Civ. P. 65. In general, "[t]emporary restraining orders are governed by the same standard applicable to preliminary injunctions." *Aiello v. One West Bank*, No. 2:10-cv-0227- GEB-EFB, 2010 WL 406092 at *1 (E.D. Cal. Jan. 29, 2010) (internal citations omitted); *see also* L.R. 231(a).

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981); *see also Costa Mesa City Emps. Ass'n v. City of Costa Mesa*, 209 Cal. App. 4th 298, 305 (2012) ("The purpose of such an order is to preserve the status quo until a final determination following a trial."); *GoTo.com, Inc. v. Walt Disney, Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) ("The status quo ante litem refers not simply to any situation before the filing of a lawsuit, but instead to the last uncontested status which preceded the pending controversy.").

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20. A plaintiff must "make a showing on all four prongs" of the *Winter* test to obtain a preliminary injunction. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). In evaluating a plaintiff's motion for preliminary injunction, a district court may weigh the plaintiff's showings on the *Winter* elements using a sliding-scale approach. *Id.* A stronger showing on the balance of the hardships may support issuing a preliminary injunction even where the plaintiff shows that there are "serious questions on the merits . . . so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* Simply put, Plaintiff must demonstrate, "that [if] serious questions going to

3

the merits were raised [then] the balance of hardships [must] tip[ ] sharply in the plaintiff's favor," in order to succeed in a request for preliminary injunction. *Id.* at 1134–35 (emphasis added).

**III. ANALYSIS**

As a preliminary matter, Defendant argues the Court should deny Plaintiff's TRO because Plaintiff has delayed in seeking such relief. Local Rule 231(b) provides that "the Court will consider whether the applicant could have sought relief by motion for preliminary injunction at an earlier date without the necessity for seeking last-minute relief by motion for temporary restraining order." Should the Court find such a delay, the Court may deny the requested TRO on those grounds alone. L.R. 231(b). Defendant asserts that because the allegedly wrongful denial occurred in August 2018, and the subsequent appeal denial occurred in October 2018, Plaintiff has substantially delayed. But Plaintiff could not have sought a TRO unless and until there was an actual pending foreclosure. That did not occur until WFB recorded the relevant Notice of Trustee's Sale on December 14, 2018, thirty-eight days before the sale date of January 22, 2019. It is true that Plaintiff probably could have filed a regularly noticed preliminary injunction motion on the Court's calendar, but the timeline for any such motion would have been tight, if not impossible. The Court finds Plaintiff's very minor delay insubstantial, and therefore declines to deny the requested TRO on the grounds of delay and instead considers the merits of Plaintiff's request.[3]

As for the merits of Plaintiff's request, the Court finds that issuance of a TRO is appropriate at this time because Plaintiff has made a showing on all four prongs of the *Winter* test articulated above. Plaintiff has established a likelihood of irreparable harm to the extent that the trustee's sale of her home is scheduled for January 22, 2019. This harm is imminent as it is neither remote nor speculative, and Defendant does not dispute that the sale of Plaintiff's home would be an irreparable harm. The Court further finds that the balance of hardships tips sharply in Plaintiff's favor because if the sale is not enjoined, Plaintiff will lose her primary residence. The Court acknowledges that Plaintiff has been in default on her loan for approximately six years,

---

[3] Local Rule 231(c) also outlines several specific documents that a plaintiff must file when seeking a TRO. Plaintiff here has met those requirements, and Defendant does not dispute otherwise.

and recognizes that further postponement places some hardship on Defendant. The hardship of an additional delay to allow further briefing on the matter, however, pales in comparison to the possibility that Plaintiff could wrongfully lose her home. Similarly, while Defendant's argument that a TRO in this case has little or no impact on the general public is well taken, to the extent it is being used to ensure compliance with laws designed to protect the public, a TRO is in the public's interest.

As for the final prong, under the "sliding-scale" approach, a plaintiff must only raise "serious questions" as to the merits of his or her claims. Here, Plaintiff has met that bar. Under the HBOR, a denial of a loan modification application must be in writing and must "identify[] with specificity the reasons for the denial" and "include a statement that the borrower may obtain additional documentation supporting the denial decision upon written request to the mortgage servicer." Cal. Civ. Code § 2924.11(b). WFB's written denial included such a statement (ECF No. 11 at 43), and Plaintiff indeed requested additional information in her detailed October 2, 2018 appeal letter (ECF No. 11 at 48-50.). More specifically, Plaintiff's counsel made five enumerated requests in the appeal letter, and even noted that his client's reported gross income was less than what WFB recorded in its denial letter. *Id.* WFB's response, however, falls far short of providing any additional information. (ECF No. 11 at 52-53.) Instead, the response letter dated October 11, 2018, provides only that WFB has "determined that [Plaintiff] still do[es] not meet the requirements for a loan modification." (*Id.* at 52.) The response does not so much as acknowledge Plaintiff's various requests for information or the purported dispute regarding Plaintiff's income. (*Id.*) Because Defendant's response is arguably insufficient to meet the requirements of section 2924.11(b) of California's Civil Code, serious questions are raised as to the merits of Plaintiff's claims under the HBOR, as well as to her claims for negligence[4] and violation of the UCL, which are premised on the same conduct.[5]

---

[4] Because serious questions are raised with regard to Plaintiff's claims under the HBOR, the Court need not and does not address whether Defendant owed a duty of care to Plaintiff, such that her negligence claim is also viable.

[5] Defendant's arguments to the contrary are not persuasive. *McKinley v. CitiMortgage, Inc.*, 2016 WL 3277254, No. 2:13-cv-01057-TLN-CKD (E.D. Cal. June 14, 2016) is not on point here, nor does it hold that injunctive relief is not an available remedy for a negligence claim where Defendant's negligence is alleged to have

Lastly, no bond shall be required. *See* Fed. R. Civ. Pro. 65(c) (requiring movant to post security); *People of Cal. v. Tahoe Reg'l Planning Agency*, 766 F. 2d 1319, 1325–26 (9th Cir. 1985) (providing that "courts have discretion to excuse the bond requirement"). First, the Court finds Defendant is adequately protected by its security interest in the subject property. *See Jorgensen v. Cassiday*, 320 F. 3d 906, 919 (9th Cir. 2003) ("The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct."); *Ticketmaster L.L.C. v. RMG Techs., Inc.*, 507 F. Supp. 2d 1096, 1116 (C.D. Cal. 2007) ("A bond may not be required, or may be minimal, when the harm to the enjoined party is slight or where the movant has demonstrated a likelihood of success."). Additionally, Plaintiff claims that if she is ordered to pay any substantial bond, she would be precluded from judicial review. *See Governing Council of Pinoleville Indian Comm. v. Mendocino Cnty.*, 684 F. Supp. 1042, 1047 (N.D. Cal. 1988) (holding that it is appropriate to waive the bond requirement where "requiring the security would deny access to judicial review.). Accordingly, the Court waives the bond requirement.

**IV. CONCLUSION**

For the reasons set forth above, Plaintiff's Application for TRO, (ECF No. 11), is GRANTED. Defendant and its agents are hereby enjoined from conducting a trustee's sale, attempting to auction, or otherwise causing to be sold the real property commonly known as 225 Stonewood Ct., Vallejo, CA 94591. Plaintiff is ordered to notice and file a motion for preliminary injunction not later than twenty (20) days from the date of electronic filing of this order. If Plaintiff fails to notice and file such a motion within twenty (20) days, the TRO shall automatically be lifted. The TRO shall otherwise remain in place until the Court rules on Plaintiff's motion for preliminary injunction. No bond shall be required.

Dated: January 18, 2019

Troy L. Nunley
United States District Judge

---

resulted in a pending foreclosure.