UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY E. McKINNEY,<br><br>    Plaintiff,<br><br>    v.<br><br>WELLS FARGO BANK, N.A.,<br><br>    Defendant. | No. 2:17-cv-02564-TLN-DB<br><br>**MEMORANDUM AND ORDER** |

      Plaintiff Mary E. McKinney ("Plaintiff") brings this action against Defendant Wells Fargo Bank ("Defendant" or "WFB") alleging violations of California's Homeowner Bill of Rights ("HBOR"), as well as negligence in the handling of Plaintiff's loan modification applications, and violations of California's Unfair Competition Law ("UCL"), California Business and Professions Code § 17200 *et seq.*, resulting from the handling of Plaintiff's loan modification applications. Plaintiff filed her Complaint in state court on November 17, 2017, and Defendant removed the action to this Court on December 7, 2017. (ECF No. 1.) Plaintiff filed an *Ex Parte* Application for Temporary Restraining Order ("TRO") on January 10, 2019 (ECF No. 11), which the Court granted on January 18, 2019 (ECF No. 14). Presently before the Court is Plaintiff's Motion for Preliminary Injunction, timely filed on February 7, 2019. (ECF No. 15.) WFB has filed an Opposition. (ECF No. 16.) For the reasons set forth below, Plaintiff's Motion is DENIED and the TRO is VACATED.

# I. FACTUAL AND PROCEDURAL BACKGROUND[1]

As set forth in the Court's Order on Plaintiff's request for TRO (ECF No. 14), the parties agree on the majority, if not all, of the facts pertinent to this action. Plaintiff obtained a loan on the subject property, her primary residence, in December 2007 through World Savings Bank FSB. Via a series of name changes and mergers, Defendant WFB thereafter became the servicer on the relevant loan. Plaintiff then fell behind on her mortgage payments. Defendant claims—and Plaintiff does not dispute—the default first occurred in October 2012 and eventually led to a Notice of Default ("NOD") recorded in February 2013. The parties then engaged in the process of submitting and reviewing multiple loan modification applications ("LMAs"). Specifically, Plaintiff submitted LMAs in April 2014 and September 2015, both of which were denied in writing. (ECF No. 16-1 ¶¶ 13-14; Exs. B, C.) Plaintiff thereafter filed a lawsuit against WFB, case number 2:16-cv-00240-JAM-KJN, which action the parties settled in June 2016. According to Defendant, WFB agreed as part of that settlement to conduct another loan modification review. That review was also denied in writing in July 2016. (ECF No. 16-1 ¶ 15, Ex. D.) Defendant filed a Notice of Trustee Sale ("NOTS") on January 5, 2017.

Plaintiff alleges that in June 2017, she submitted another LMA. (ECF No. 1 ¶ 30.) Plaintiff asserts she was thereafter "shuffled from one representative to another every time she called to check on the status of [the] application," and that WFB never assigned a Single Point of Contact ("SPOC") as required under the HBOR. (ECF No. 1 ¶ 31.) Plaintiff alleges that in October 2017, she was informed over the phone that her LMA was denied. (*Id.* ¶ 33.) According to Plaintiff, WFB only stated that she could afford the loan, gave no other reasoning for the denial, and never provided her with a written denial. (*Id.* ¶¶ 33-34.) Defendant is silent on this issue and neither party has submitted evidence of the 2017 LMA aside from Plaintiff's signed declaration (ECF No. 15-1 at 1-2).

Plaintiff then filed the present lawsuit in state court on November 17, 2017, and Defendant removed the action to this Court on December 7, 2017. (ECF No. 1.) Plaintiff's Complaint (ECF No. 1) alleges violations of the HBOR, as well as negligence in the handling of

---

[1] Unless otherwise noted, the following facts are derived from the parties' briefs and are undisputed.

Plaintiff's loan modification application, and violations of the UCL resulting from WFB's handling of a loan modification application submitted in June 2017.

After filing her Complaint, Plaintiff submitted another loan modification application in August 2018, which was denied in writing later that month. Therein, Plaintiff was offered a short sale of her home, but took no action in that regard. (*See* ECF No. 15-2 at 41-46.) Instead, Plaintiff appealed the denial by a letter from counsel dated October 2, 2018, specifically requesting additional information regarding the reasons for denial pursuant to California Civil Code § 2924.11. (*Id.* at 48-50.) WFB denied the appeal in writing later that month. (*Id.* at 52-53.) The letter denying Plaintiff's appeal provided only that Plaintiff "still [did] not meet the requirements for loan modification." (*Id.* at 52.) Defendant asserts that it then mailed Plaintiff a second letter, dated October 25, 2018, responding to Plaintiff's request for information and providing the requested documentation. (ECF No. 16-1 at 72-79.) Plaintiff asserts that she did not receive the letter and had not seen it until it was filed in connection with Defendant's Opposition to her Motion for Preliminary Injunction. (ECF No. 18.)

On December 14, 2018, WFB issued another Notice of Sale, setting the sale date for January 22, 2019. (*Id.* at 55-62.) Plaintiff thereafter sought and received the operative TRO, and—upon Order from this Court—filed the present Motion for Preliminary Injunction. (ECF Nos. 14-15.) The Court understands another date for non-judicial foreclosure sale has been set for July 2, 2019, and WFB has requested a ruling on the pending preliminary injunction motion to clarify the parties' rights and obligations with respect to the previously-issued TRO, the pending Motion for Preliminary Injunction, and the approaching sale date. (ECF No. 23.)

**II.    STANDARD OF LAW**

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981); *see also Costa Mesa City Emps. Ass'n v. City of Costa Mesa*, 209 Cal. App. 4th 298, 305 (2012) ("The

purpose of such an order is to preserve the status quo until a final determination following a trial."); *GoTo.com, Inc. v. Walt Disney, Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) ("The status quo ante litem refers not simply to any situation before the filing of a lawsuit, but instead to the last uncontested status which preceded the pending controversy.").

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20. A plaintiff must "make a showing on all four prongs" of the *Winter* test to obtain a preliminary injunction. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). In evaluating a plaintiff's motion for preliminary injunction, a district court may weigh the plaintiff's showings on the *Winter* elements using a sliding-scale approach. *Id.* A stronger showing on the balance of the hardships may support issuing a preliminary injunction even where the plaintiff shows that there are "serious questions on the merits . . . so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* Simply put, Plaintiff must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply in the plaintiff's favor," in order to succeed in a request for preliminary injunction. *Id.* at 1134–35 (emphasis added).

**III. ANALYSIS**

Upon issuing the TRO in this matter, the Court found that Plaintiff had made a showing on all four prongs of the *Winter* test articulated above. At that time, Plaintiff had established a likelihood of irreparable harm because the scheduled trustee's sale of her home was imminent. While that harm still exists, on further briefing from both parties, the Court finds Plaintiff has not established a likelihood of success on the merits of her claims, nor has she raised serious questions going to the merits of those claims, as discussed in detail below.

*A. Likelihood of Success on the Merits*

Plaintiff's Complaint asserts causes of action for violations of the HBOR, negligence, and unfair business practices premised on Defendant's conduct in 2017 and before. (ECF No. 1.) Plaintiff's Motion for Preliminary Injunction, however, is based on Defendant's allegedly

4

improper denial of her 2018 LMA, which occurred after she filed the operative complaint. (*See* ECF No. 15.) This alone may be sufficient grounds to deny the requested relief. *See Pacific Radiation Oncology, LLC v. Queen's Med. Cntr.*, 810 F.3d 631 (9th Cir. 2015). Because the 2018 LMA denial is closely connected to the alleged 2017 conduct, however, the Court is hesitant to base its denial of the requested preliminary injunction solely on Plaintiff's failure to amend her complaint to add the more recent allegations. *See id.* ("[T]here must be . . . a sufficient nexus between the claims raised in a motion for injunctive relief and the claims set forth in the underlying complaint itself. The relationship between the preliminary injunction and the underlying complaint is sufficiently strong where the preliminary injunction would grant relief of the same character as that which may be granted finally."). Consequently—and because the outcome is the same regardless—the Court will consider the merits of Plaintiff's motion as if the 2018 conduct underlying the motion were properly plead in the operative complaint. Even so, Plaintiff has failed to establish serious questions as to the merits of her claims.

1. <u>Homeowner Bill of Rights Violations</u>

By way of the pending motion it appears Plaintiff seeks injunctive relief based on three provisions of the HBOR: (1) the prohibition on dual-tracking; (2) the requirement of written notice of denial; and (3) the required waiting period for appeal.[2] (*See* ECF No. 15 at 11.) As noted in the Court's Order on Plaintiff's TRO and in WFB's briefing on the present preliminary injunction, Plaintiff's Complaint, filed in 2017, asserts violations of Cal. Civ. Code § 2923.6 (prohibiting dual-tracking and requiring written notice of denial). Plaintiff appears in her motion to assert similar claims, but only with respect to WFB's denial of her 2018 LMA. The dual-tracking and written notice provisions appear in the 2018 HBOR under Cal. Civ. Code § 2924.11(a) (prohibiting dual-tracking) and (b) (requiring written notice of denial). The Court therefore considers Plaintiff's arguments raised in her motion but considers them under the then-operative 2018 HBOR.[3]

---

[2] Because Plaintiff's motion does not contend that WFB failed to assign a single point of contact in connection with the actions taken in 2018, the Court does not address that provision here.

[3] The 2018 HBOR did not impose a waiting period pending an appeal, and so injunctive relief cannot be granted on that basis.

5

In order to obtain an injunction, Plaintiff must show that any violation of the HBOR was material. Cal. Civ. Code § 2924.12(a)(1). A violation is material if it affects the borrower's loan obligations or disrupts the loan modification process. *See Cardenas v. Caliber Home Loans, Inc.*, 281 F. Supp. 3d 862, 869–70 (N.D. Cal. 2017) (collecting cases). Moreover, even if there was a material violation, the mortgage servicer is no longer liable if the violation was "corrected and remedied prior to" the foreclosure sale. Cal. Civ. Code § 2924.12(c). Section 2924.11(a) explicitly forbids the mortgage servicer from recording a NOTS or conducting a trustee's sale while a borrower's completed LMA is pending. Here, the undisputed evidence shows that WFB did not engage in dual-tracking as prohibited under California Civil Code § 2924.11(a). Specifically, Plaintiff concedes that she submitted the 2018 LMA on August 10 and received a letter denying her application on August 30. (ECF No. 15 at 8.) WFB then recorded a NOTS on December 14, 2018. (*Id.*) Defendant denied Plaintiff's 2018 LMA three-and-a-half months before it recorded the relevant NOTS. There was no dual-tracking in this case.

The 2018 HBOR additionally requires the loan servicer's notice of denial to be in writing, to provide the reasons for denial, and to include a statement that the borrower can obtain additional documentation supporting the denial. Cal. Civ. Code § 2924.11(b). Here, the evidence indicates that WFB complied with that requirement. (*See* ECF No. 11 at 43.) WFB's written denial provided the reason for denial and gave a statement that additional documentation could be obtained. (ECF No. 11 at 43.) In issuing a TRO in this matter, the Court found that WFB's response to Plaintiff's request for more information was "arguably insufficient to meet the requirements of section 2924.11(b) of California's Civil Code." But Defendant has now produced a second letter that it contends it sent to Plaintiff in October 2018, providing additional detailed information. Moreover, even if the Court were to accept Plaintiff's argument that she never received that follow-up letter, nothing in § 2924.11(b) requires more than the initial written denial. The 2018 HBOR did not provide for specific appeal rights, and so Plaintiff is not likely to succeed on any claim premised on such a violation.

Lastly, under § 2924.12(a)(2) of the HBOR, any injunction shall remain in place only until the material violation has been remedied. Moreover, a mortgage servicer "shall not be liable for

6

any violation that it has corrected and remedied prior to the recordation of the trustee's deed upon sale . . . ." HBOR § 2924.12(c). Here, even if the Court were to find that WFB violated the HBOR by (1) cursorily denying Plaintiff's appeal, and (2) not thereafter providing the additional information Plaintiff requested, that violation has now been remedied by WFB's production of the October 25 letter. As such, WFB cannot be held liable for any previous violation. In other words, Plaintiff's only remaining argument is that she disagrees with WFB's ultimate denial of her 2018 LMA. But, as correctly noted in Defendant's opposition, the HBOR requires only a certain process, not a favorable outcome. *McKinley v. CitiMortgage, Inc.*, No. 2:13-cv-01057-TLN-CKD, 2016 WL 3277254, at *7 (E.D. Cal. 2016) ("Plaintiffs cite no case finding that, under § 2923.6(b) specifically, a loan servicer can be compelled by a court to engage in a meaningful review."). Consequently, the Court finds Plaintiff is not likely to succeed on the merits of her HBOR claims, nor has she raised serious questions going to the merits of those claims.

### 2. Business and Professions Code § 1700

Plaintiff's motion also asserts that her claim under Business and Professions Code § 17200 is premised on Defendant's violation of the HBOR, which constitutes an unfair business practice.[4] Because the Court finds that Plaintiff has failed to raise serious questions going to the merits of her claims under the HBOR, it follows that the same is true of her claim for unfair business practices. As a result, the Court will not issue an injunction premised on the alleged violation of § 17200.

### 3. Negligence

With regard to Plaintiff's negligence claim, to the extent Plaintiff alleges negligence *per se* based on Defendant's violation of the HBOR, Plaintiff has not established serious questions or a likelihood of success on the merits of such a claim. To the extent Plaintiff attempts to establish a separate claim of common law negligence premised on WFB's failure to properly and in good faith review her 2018 LMA (ECF No. 15 at 14), Plaintiff has again failed to raise serious questions going to the merits of such a claim.

---

[4] The Court acknowledges that § 17200 prohibits both "unfair" and "unlawful" conduct, and acknowledges that the two are not synonymous. Plaintiff, however, asserts that WFB engaged in "unfair" practices specifically "by violating [the HBOR] . . . ." (ECF No. 15 at 17.)

7

To assert a cause of action for negligence, Plaintiff must allege: "(1) a legal duty to use reasonable care, (2) breach of that duty, and (3) proximate cause between the breach and (4) the plaintiff's injury." *Mendoza v. City of Los Angeles*, 66 Cal. App. 4th 1333, 1339 (1998). Assuming for the moment that Plaintiff has established Defendant owed her a duty of reasonable care (an issue on which the parties acknowledge courts are split), Plaintiff has failed to raise serious questions concerning any breach by WFB. Rather, the undisputed facts recited above reflect that Plaintiff was reviewed for a loan modification multiple times over the last six years, and was denied each time. Relevant to the present motion, Plaintiff's 2018 LMA was denied in writing, and her subsequent appeal was also denied in writing. Plaintiff argues that the reasoning provided for the denial—that her "financial situation" showed that she had the ability to make her mortgage payment—reflects the exact reason she should have been approved. (ECF No. 15 at 14.) But she has not shown that WFB's review failed to meet some (unspecified) standard of care. Simply asserting that she disagrees with the outcome and reasoning behind the denial of her 2018 LMA is not enough to raise serious questions that WFB breached any duty it owed Plaintiff as the mortgagee. Again, even assuming WFB owed her a duty to exercise reasonable care or good faith in its review, a negative outcome without more does not raise serious questions concerning a breach of that duty.

Secondarily, Plaintiff claims in passing that the 2018 denial provided an incorrect amount for her monthly income. While this could conceivably be a basis to allege a breach of duty, Plaintiff fails to provide evidence of the income discrepancy outside of her vague declaration that the figure used was "incorrect." Moreover, Plaintiff fails to raise serious questions that the use of an incorrect income *caused her injury*. Put differently, Plaintiff makes no effort to argue that the use of her "correct" income would have produced a different result. *See Griffin v. Green Tree Servicing, LLC*, 166 F. Supp. 3d 1030, 1053 (C.D. Cal. 2015). Consequently, the Court finds Plaintiff has failed to raise serious questions going to the merits of her negligence claim.

### B. Remaining Prongs of the *Winter* Test

Given the Court's finding that Plaintiff has failed to raise even serious questions going to the merits of her claims to justify an injunction in this matter, the Court need not make any

determination with regard to the remaining factors.

### IV. CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Preliminary Injunction (ECF No. 15) is DENIED and the TRO previously issued (ECF No. 14) is VACATED.

Dated: June 30, 2019

Troy L. Nunley
United States District Judge